[No. B023647. Second Dist., Div. Six. Sept. 4, 1987.]

SALVATORE A. CANALE, as County Superintendent, etc., Plaintiff and Respondent, v.
BILL HONIG, as Superintendent, etc., et al., Defendants and Appellants.

**Counsel**

Joseph R. Symkowick, Roger D. Wolfertz and Joanne Lowe, for Defendants and Appellants.

Frank J. Fekete, Peter C. Carton, Joanne A. Velman, Stephen L. Hartsell, Dwayne L. Chambers, Roger R. Grass and Frank W. Ronich for Plaintiff and Respondent.

## Opinion

**GILBERT, J.—** ■ Education Code section 2558[1] provides for the apportionment of state aid to county superintendents of schools and restricts the county superintendents from spending funds beyond annual apportionment limits determined under the statute for a current fiscal year.

■ The San Luis Obispo County Superintendent of Schools has funds which exceed the apportionment limits set for fiscal 1985-1986. **(1b)** These excess funds must be reported to the state and treated as local property tax revenues for calculation of the appropriate apportionment in the next fiscal year under section 2558, subdivision (e). We hold that the superintendent may not use these funds under section 2558.5 for local use in the following fiscal year unless he reports the excess amount to the state and does not exceed the apportionment limit set for the following fiscal year under section 2558.

Under section 2558, subdivision (e), revenue in excess of the aid limit set forth in this statute is deemed restricted and not available for expenditure during the fiscal year in which the excess occurs. For the next fiscal year, that excess revenue must be considered local property tax revenue for purposes of calculating the apportionment to be made by the state to the county superintendent for that next fiscal year.

■ Salvatore A. Canale, the county superintendent of schools for San Luis Obispo, refused to report such restricted, excess aid on his annual reporting form for the 1985-1986 fiscal year. The State Department of Education responded by returning the form to the county with revised figures reflecting the excess amounts pursuant to section 2558, subdivision (e).

Canale then filed a petition for writ of mandate, declaratory relief and order for restitution in the San Luis Obispo Superior Court. An alternative writ was issued, and judgment was entered for Canale. We reverse.

### Discussion

■ At issue is the proper interpretation of sections 2558 and 2558.5. Section 2558 supplies a specific formula for determining the amount of annual aid the state apportions to each county superintendent of schools.[2]

---

[1] All further statutory references are to the Education Code unless otherwise specified.

[2] Section 2558 states: "Notwithstanding any other provision of law, for the 1979-80 fiscal year and each fiscal year thereafter, the Superintendent of Public Instruction shall apportion state aid to county superintendents of schools pursuant to the provisions of this section.

"(a) The Superintendent of Public Instruction shall total the amounts computed for the fiscal year pursuant to Sections 2550, 2551, 2551.3, 2554, 2555, and 2557. For the 1979-80

The first three subdivisions of section 2558 determine the amount of state aid to be apportioned to each county. Subdivision (e) restricts a county's expenditure of funds for a current fiscal year if it exceeds the limit set by subdivisions (a) through (c).

The county superintendent's budget, therefore, has an annual revenue limit for the purpose of calculating state apportioned aid for each fiscal year. That limit is determined by adding up the limits of individual programs and projects the particular county operates under the statutes mentioned in section 2558. The total sum of those individual limits is reduced by subtracting certain specified items, such as decreased Public Employees' Retirement System (PERS) contributions, and certain local property tax revenues, to determine what state aid, if any, will be provided, in addition to other funding the county superintendent may have. If the sum of the specified items exceeds the sum of the program and project limits, the state provides no aid that year. (§ 2558, subd. (e).)

The excess funds affect the amount of state aid for the next fiscal year. The county superintendent must include any excess funds as local property

---

fiscal year and for purposes of calculating the 1979-80 fiscal year base amounts in succeeding fiscal years, the amounts in Sections 2550, 2551, 2552, 2554, 2555, and 2557, as they read in the 1979-80 fiscal year, shall be multiplied by a factor of 0.994. For the 1981-82 fiscal year and for purposes of calculating the 1981-82 fiscal year base amounts in succeeding fiscal years, the amount in this subdivision shall be multiplied by a factor of 0.97.

"(b) For the 1983-84 fiscal year and each fiscal year thereafter, the amount computed in subdivision (a) shall be reduced by the amount of the decreased contributions to the Public Employees' Retirement System resulting from enactment of Chapter 330 of the Statutes of 1982. For the 1983-84 fiscal year and each fiscal year thereafter, the decreased contributions shall be based on the 1982-83 salaries of employees participating in the Public Employees' Retirement System during the 1982-83 fiscal year. For the purposes of this subdivision, no reduction shall be made for decreased contributions for positions that were funded totally from federal funds during the 1982-83 fiscal year.

"(c) The Superintendent of Public Instruction shall also subtract from the amount determined in subdivision (a) the sum of: (1) local property tax revenues received pursuant to Section 2573 in the then current fiscal year, and tax revenues received pursuant to Section 2556 in the then current fiscal year, (2) state and federal categorical aid for the fiscal year, (3) district contributions pursuant to Section 52321 for the fiscal year, and other applicable local contributions and revenues, and (4) any amounts that the county superintendent of schools was required to maintain as restricted and not available for expenditure in the 1978-79 fiscal year as specified in the second paragraph of subdivision (c) of Section 6 of Chapter 292 of the Statutes of 1978, as amended by Chapter 51 of the Statutes of 1979.

"(d) The remainder computed in subdivision (c) shall be distributed in the same manner as state aid to school districts from funds appropriated to Section A of the State School Fund.

"(e) If the remainder determined pursuant to subdivision (c) is a negative amount, no state aid shall be distributed to that county superintendent of schools pursuant to subdivision (d), and an amount of funds of that county superintendent equal to that negative amount shall be deemed restricted and not available for expenditure during the current fiscal year. In the next fiscal year, that amount shall be considered local property tax revenue for purposes of the operation of paragraph (1) of subdivision (c) of this section."

tax revenue for the calculation of potential apportionment for the superintendent's budget for the next year. (*Ibid.*) These excess funds are then subtracted from the revenue limit established by the sum of section 2558 funds for programs and projects established for the next fiscal year.

■ We disagree with the trial court's finding that the more recently enacted section 2558.5 repeals conflicting, less specific provisions of section 2558, subdivision (e). Section 2558.5 states, in pertinent part, that, "revenues *received* pursuant to Section 2558, and any ending balances from the prior fiscal year from state or local revenues, may be used by the county superintendent for any of the programs operated by the county office." (Italics added.)

There is no conflict between sections 2558 and 2558.5. They coexist because they concern separate issues. Section 2558 establishes the amount of apportionment aid the state shall provide each county superintendent of schools. (And see § 2558, subd. (d).) Section 2558.5 explains how various funds available for use may be used. These funds may include section 2558 funds for the current fiscal year and ending balances from previously received state or local revenue sources, if available for use. Section 2558.5 does not make available to the superintendent funds restricted by section 2558, subdivision (e). It merely permits the county superintendent to determine how to use apportioned funds actually received.

■ Funding from sources other than those listed in section 2558 are not subject to the revenue limitation and may be spent as the county superintendent deems appropriate under section 2558.5. Such funds are not used *in the calculation to determine the amount of state apportionment aid under* section 2558.

■ When funds listed in section 2558 are involved, that section controls all other sections in this statutory scheme, including section 2558.5. Section 2558 states: "Notwithstanding any other provision of law, . . . the Superintendent of Public Instruction shall apportion state aid to county superintendents of schools pursuant to the provisions of this section."

Section 2558 is also more specific than section 2558.5 because it states directly the manner in which excess funds are to be handled. Referring to such funds, subdivision (e) states: "In the next fiscal year, that amount shall be considered local property tax revenue for purposes of the operation of paragraph (1) of subdivision (c) of this section [which requires the subtraction of this amount from the potential apportionment total]."

Section 2558.5 was created in the same bill in which section 2558 was amended. No intention to repeal section 2558, subdivision (e) appears from

the legislative history of either section. The Legislature chose not to change or delete its rule in subdivision (e). Therefore, it intended that rule to continue. (*Natural Resources Defense Council, Inc.* v. *Arcata Nat. Corp.* (1976) 59 Cal.App.3d 959, 973-974 [131 Cal.Rptr. 172]; 58 Cal.Jur.3d, Statutes, § 91, p. 446.)

We reverse the judgment and direct the court below to vacate its writ of mandate and enter judgment for appellants. The court shall also order respondent superintendent of schools to report the amounts of restricted revenue calculated for the 1985-1986 fiscal year as local property tax revenue to the State Department of Education on its form number J-29-C, column 8. The parties are to bear their own costs.

Stone, P. J., and Abbe, J., concurred.

A petition for a rehearing was denied October 1, 1987, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied December 16, 1987.